Good morning, our first case is number 2024-10386, State of Texas v. Todd Wallace-Blanche et al. Good morning, your honors, and may it please the court, Sean Jambo for the federal government. When the House of Representatives enacted the 2023 Consolidated Appropriations Act, 427 of the 431 members, more than 99%, recorded a vote on the legislation. Nonetheless, Texas now contends, and the district court agreed, that the House lacked a quorum when it voted because fewer than half of the House's members were physically present on the floor at the time of the vote. That claim fails on all levels. As an initial matter, Texas's attempt to impeach the validity of the Act is precluded by the Supreme Court's categorical commands in Marshall Field. Courts are required to quote, accept as having passed Congress, all bills, unquote, properly enrolled. Nobody disputes that the 2023 Act was properly enrolled, and Texas cannot now question whether it properly passed Congress. Regardless, Texas's claim finds no purchase on the merits. The quorum clause provides only the majority of each House shall constitute a quorum, and the word quorum refers to the number of members participating in the House's business according to the rules of the House, without regard to their physical presence. That is naturally understood across a variety of contexts. Nobody thinks the majority of this court must assemble in the same room in order to cast a vote on an opinion, nor must the Supreme Court, multi-member administrative bodies, or even corporate shareholders gather together in person to satisfy the quorum requirements applicable to each. Thus, Texas concedes in its brief, as it must, that the word quorum standing alone does not necessarily suggest that members must be physically present. Nonetheless, Texas relies on second-order inferences about other pieces of constitutional text, and on early Congress's policy choices about how to authorize member participation to read that requirement into text it does not contain. That effort is unpersuasive. For one, it gets the nature of the inquiry wrong. The Constitution provides the House with discretion to make rules governing its own proceedings, including rules that determine how members may participate and how a quorum may be established. To limit that discretion, the Constitution would have to speak clearly, and the ancillary inferences put forward by Texas do not provide any such clear limits. Regardless, Texas's arguments read far too much into the framework's assumptions and practices, which were driven by the technological limits of their time and by their own policy choices, not by any intent to disable Congress forever from adopting rules to allow remote participation in legislative business. Finally, the implications of Texas's position are, as Sander McConnell's amicus brief puts it, hard to fathom. As Texas itself concedes, the necessary implication of its position is that the entire 2023 Consolidated Appropriations Act was never validly enacted. Under their view, the executive branch may not continue to disperse the trillions of dollars appropriated by that legislation, nor may it continue to enforce the many pieces of permanent legislation contained in the act, including legislation helping families of September 11th victims, legislation providing benefits to veterans, and legislation extending certain judgeships. And beyond that, the logical consequences of Texas's view are sprawling. Their view may disable Congress from acting at all in a future emergency if a majority of members are not able to physically gather in a single location, and if the Quorum Clause truly required the physical presence of a majority of each House in the same location, the House and Senate could not validly conduct business by unanimous consent or voice vote without a majority of members physically present. Any such holding would immediately call into question the many statutes that have been enacted under those circumstances and the validity of the countless executive and judicial nominees confirmed under those circumstances. The Constitution does not require those extreme and destabilizing results in this torturing universe. I welcome the Court's questions. In the government's view, what presence does the Quorum Clause require? So the Quorum Clause requires presence as defined by the House's rules, and so I think— So the House gets to define presence and quorum? They certainly get to define presence to the extent that that's necessary for a quorum, and I think there's two things that certainly would suffice to satisfy the quorum requirement. Number one is actual participation in the business of the House pursuant to the rules adopted by the House. So here where you have members— But the House gets to define what actual participation is? Yes, and certainly the House has extremely broad discretion to do that. I don't want to say that there could never be an outer limit, but certainly here where you have members, I mean, again, voting on this specific piece of legislation with specific instructions pursuant to rules adopted by the House, that certainly counts. Yes, but under your theory, though, there are no guardrails. That just happened to be what the House chose in this context. So I'm not sure that's quite right, Your Honor. I mean, I think, number one, to the extent there are guardrails, I'm not sure that the Quorum Clause is what provides them. Can the House make rules by proxy? I think the House has a lot of authority to adopt its own rules, and I think the key thing is that— Can they adopt the rules by proxy? If they're—I'm not sure what they would have to do, sort of, in the first instance. I mean, I think the key point is that the Constitution gives Congress—gives each House the authority to adopt its own rules. But the kind of antecedent question about how those rules have to be adopted is probably a trickier one. But then once you have the rules, to the extent Congress has authorized participation by— Well, you're talking about chickens and eggs at this point. The Congress that will be elected in this fall's midterm elections, 2026, can they literally never meet in Washington? Maybe. I believe there are other constitutional requirements about, sort of, meeting on particular days. No, but, I mean, could they meet by proxy? Again, maybe. That certainly is not presented by this case, and I think this— But your definition of presence is participation, or your definition of quorum is participation. If they all sit in their field offices and never go to Washington for two solid years, there's nothing to prevent them doing that under your theory of the quorum clause. I mean, certainly the quorum clause doesn't prevent that. I think that the key point is that the quorum clause is about ensuring majoritarian participation in legislative business, ensuring that a minority faction in Congress cannot enact legislation against the will of the majority. Can proxies—could 434 proxies be given to the speaker of the House? Again, I don't know that the quorum clause would have anything to say about that. There may well be, sort of, other constitutional limits. Well, not for voting, for presence for quorum purposes. Again, presence is not in the quorum clause, so— But Ballin says it is. Ballin—I mean, to the extent that the Court is going to, sort of, gloss the quorum clause with Ballin's description of it— The Supreme Court glossed the quorum clause. They said the quiet part out loud. They said a presence of the majority of members is what is required for the power of the House to arise. Yeah. I mean, I think the Supreme Court, in that context, was focused on the question whether physical presence is sufficient. If there's a House rule allowing the counting of people who are present but not actively participating, certainly there was nothing in Ballin— But there again, you say the quorum clause is centered on participation. Ballin acknowledged that those members were not participating. They were present. So Ballin, I think, acknowledged, Your Honor, that the House has the ability under the rulemaking clause to adopt rules governing its own proceedings. And if it wants to count members who are physically present but are not participating, that's certainly allowed under Ballin. I think that it is also true that if the House wants to adopt rules, which they did in this case, allowing the counting of people who are participating but are not physically present— By the same logic, I mean, that falls right within the discretion granted to the House. And again, I'll just return to the fact that this is true in every context that I think we or Texas can think of. I mean, this Court has a quorum requirement, a statutory quorum requirement. No one thinks that when you have a motions panel that's going to vote on a motion, you need to all get into the same room and do it. I mean, I think the point is that— But we don't have a clause in the Constitution that says so. No, but you have a statutory requirement. Nor do the agencies and the other examples you cited. No, I mean, I think our point is not that that's coming from the Constitution. The point is that quorums are naturally understood to refer to those who are participating according to the rules governing participation. And the physical presence requirement is just not a requirement that appears in the Constitution. Can you counsel? So you just said the physical presence requirement doesn't appear in the Constitution. So I'm looking at the quorum clause, and there's a semicolon. It says, but a smaller number—smaller number than a quorum—may adjourn from day to day and may be authorized to compel the attendance of absent members. What does attendance mean in that clause? I think attendance in that clause is most naturally understood to refer to attendance to the business of the House. However, the House may— It doesn't mean physical presence. So, no, not necessarily. I mean, if the House has adopted rules allowing for remote participation— So give me a scenario where a smaller number than a quorum may compel the attendance of absent members that doesn't involve physical presence in the chamber. I mean, I think if you had a circumstance where people were physically absent and were not participating in the business— No, that doesn't involve physical presence in the chamber. How would that work if it doesn't mean physical presence? I mean, that's—what I'm saying is that if people are not participating, however the House allows them to participate— Someone's doing Sudoku on their iPad. No judges right now are doing that, of course, but if some member of the House were doing Sudoku—I think I'm pronouncing that right—on their iPad, you're saying that a smaller number than a quorum can say the members doing Sudoku are here by order to stop. Yeah, I mean, look, I think if you sort of go back to the pre-ballot rule, just as an example of this, where you had to actually vote to count toward the quorum. If you had members who were congregating in the hall or who were in the back of the House not paying attention, not voting, and therefore not counting toward the quorum, a smaller number may well have been able to— So on this view, attendance then means some sort of like paying attention to? I think I'm saying attending to the business, participating in the business. So there's another clause of the Constitution that says senators and representatives shall in all cases be privileged from arrest—except treason, felony, breaches of peace—be privileged from arrest during their attendance at the session of their respective houses and in going to and returning from the same. So there's attendance again. Is that not a physical presence idea? I don't think it necessarily refers to a physical presence idea. Okay. Give me an example of being privileged from arrest during attendance that doesn't involve physical presence in the chamber. I mean, sure. The House adopted rules allowing for sort of Zoom participation in a hearing or in a legislative session. And a member were in their office in their home district traveling to their office to log on to the Zoom or were logged on to the Zoom in their home office or their district office. That clause may well privilege them from arrest. But it doesn't mean that members of Congress are going in and out of trances, I mean mentally going to and from their attendance at the session. I mean that's preposterous. I mean I think that that clause certainly contemplates that people will often, if not usually, be traveling physically to participate. Well, it comes right after Clause 5, which is where the quorum clause is, and it's the only other place in the Constitution that uses the word attendance. Certainly. Again, I think there's no doubt that the framers assumed that, again, if not always, often. So they used it in two senses. They used it in two different senses in adjacent clauses. I'm not saying they're different senses. I mean, again, I think if a member were traveling to their district office to log on to the Zoom to participate in the legislative business. So we're not, okay, I take your point about Zoom. Let's put that to one side. Here we're talking about presence by proxy, by essentially signing a piece of paper that gives my proxy to another member for presence. So that's what this case is about. How does in going to and returning from the same work with a proxy presence requirement? When are you going to be privileged from arrest under a proxy presence system? I mean, again, if you were traveling to a district office to transmit your written instructions to participate according to these rules, maybe you'll be privileged from arrest. I don't know. But I think the sort of fundamental… But we have to know, right, because the Constitution says that they are privileged from arrest during their attendance and in going to and returning from the same. Right. If a case came up where a member was arrested while traveling to their office… Well, if they could give a proxy, it wouldn't matter if they were sitting in jail. They could be arrested and still participate in the proceedings under your theory. I mean, I'm not entirely sure if that's true, Your Honor, given the particular sort of participation requirements here. But the more fundamental point, I think, is that there's a lot in the Constitution that I think reflects the framers' correct assumption that oftentimes Congress would be meeting together in person, that members would be traveling to and from sessions. But there's nothing in the farm requirement itself that sort of includes any physical presence requirement. But there's nothing to support your theory with an actual living, breathing instance of this being done from about 1789 until 2023. There's no historical example of a proxy being sent in for presence. So let me say a few things about your argument. Number one, I think both sides have a this never happened before. Do you have an example of this having been done at any time in the history of the country before 2023? To my knowledge, this is the first time that Congress adopted procedures allowing remote participation. But did anybody ever try? I mean the House, I think probably for very good policy reasons, has not authorized that sort of participation previously. Despite the War of 1812, the Civil War, the Spanish flu in 1918, and other tumults and events in the history of our country, 9-11, it's never happened before 2023. No, I think Ballin makes very clear that Congress doesn't give up its authority to make rules governing its own proceedings by not exercising it. But if we're interpreting the quorum clause, we go back to the time of the founding, and we know that the Congress didn't convene at first on time because they couldn't get a quorum present in Washington, Philadelphia, New York, wherever it was at that point. They had to wait a whole month, and they sent out circulars to try to get enough senators to show up. We know that no one at that time tried to send in a proxy. I can't get there. The roads won't allow me to get there. Senator so-and-so has my proxy. It never happened. No, and again, there may have been very good reasons, particularly given the limits of the founding. Let me fast forward to the Spanish flu, because by that time, there were abundant means of communication, telegraph, and I think probably even telephone for congressmen. So there could have been such an emergency rule during a Spanish flu, right? I mean the House certainly could have adopted that kind of rule during the Spanish flu if they wanted to. I think the fact that the House has for a long time had for policy reasons not to adopt that rule has nothing to do with— Well, they had the telegraph in the 1840s, 20 years before the Civil War. What hath God wrought? And nobody wrought anything like this during the Civil War or leading up to it or after that. Look, the House has never before this, to my knowledge, authorized proxy participation or remote participation. But travel has gotten—travel and the ability to get to D.C., all the things the founders were concerned with, has gotten easier and easier over the ensuing two centuries. Yes, again, there may well have been policy reasons for the House not to do that, and I think it's important here. Texas doesn't challenge the rules of authorizing remote participation. Texas, I think, concedes for purposes of this appeal that the House validly adopted those rules and those votes may be counted. They're then trying to use the Quorum Clause to come in on the back end and say even though the House could legitimately allow people to participate by proxy, the Quorum Clause disables the House from counting those participating toward the quorum. Could I just—to get clarifications on a few answers you've given, on your early point about implications and outer limits, would the Quorum Clause actually prohibit Congress from saying a minority that is present is a majority? Yes, I think that's a very clear limit in the Quorum Clause. A majority means 50 percent plus one. And then when you were asked questions about the Compulsion Clause, is the logic of your position that the sergeant of arms could go out and force seceding or distant members to participate remotely? Yes, I mean, I think if Congress adopted a rule allowing that, that would be perfectly permissible under the Compulsion Clause. And then just the other thing about the Compulsion Clause that I just want to make clear, even if you look at the Compulsion Clause and you think that attendance and absence in the Compulsion Clause refer to physical attendance and absence, that still doesn't get Texas all the way home. They then have to read back into the quorum requirement a physical presence requirement that just isn't there. And even if the framers assumed that the way to deal with quorum busting would be sort of that physical arrest and transport of members to wherever Congress was physically located, that doesn't tell you anything about whether the framers thought that if there were rules authorizing remote participation, that that could be counted for the quorum. Are you aware of how the Senate Judiciary Committee defines quorum for its purposes? No. So every member of this panel has obviously gone through the Senate Judiciary Committee process. My guess is some fraction of members of this court had their confirmations delayed because there were not enough people in the room. So the Senate Judiciary Committee defines quorum precisely in the matter that you're rejecting. So Senator McConnell, I think his amicus brief is very helpful in this. I mean, what he says is he thinks that the proxy voting rules adopted by the House were bad policy. The Senate never adopted those sorts of rules allowing remote participation. But as he makes clear, he thinks it's within the authority of the House. It would be really a remarkable judicial intrusion for this court to superintend how the House conducts its own business. And the fact that, again, the Senate may have had very good policy reasons. So is this the unanimous consent theory that you're talking about? I think there's two things. Number one is there is, I think, a serious problem with unanimous consent, which I'm happy to talk about. It's not surprising for the Senate to want to defend itself against other branches. So that's – we're not going to defer nakedly. We're going to analyze the arguments on the merits. So I'm trying to understand. You're talking about the unanimous consent theory. I mean, my point, Your Honor, is just that the Senate Judiciary Committee may well have policy reasons. I mean, I think Senator McConnell made this brief. Well, but at least it's a body of the Senate, and it's not unique in this regard, that defines quorum to require physical presence, the lack of which means that the committee can't take action. So I assume you agree that it's not insane for somebody to have the view that quorum means physical presence. You accept that that's a permissible interpretation or do you not? Yes. I mean, certainly pursuant to the rulemaking power of each body, the House and the Senate may adopt sort of reasonable rules regarding who may count for the quorum. If they want to adopt a rule saying you have to be physically present, I think that's – So quorum can mean physical presence. It might not mean physical presence. It depends on the context. It just goes to the textual cues that we were talking about earlier. I wouldn't quite put it that way, Your Honor, because I think here – Well, otherwise the Senate Judiciary Committee is crazy then. No, Your Honor. I think here the really important context is the rulemaking clause. And so to the extent that there is any ambiguity in the constitutional quorum requirement, that ambiguity – Okay. So you would agree that you can't – I'm well aware of the rule. I used to work in the Senate. I'm aware of the rulemaking clause. I assume you agree that Ballin and countless other cases make clear you can't pass a rule that violates the Constitution. Certainly, but – So that's the only question we have here is whether this violates the Constitution. But I think what Ballin makes clear – We can stop talking about the rulemaking clause. We all agree it exists. No, I mean, I think the rulemaking clause is deeply important, Your Honor, in that what Ballin makes clear – Well, Article I, Section 7 allows Congress to pass laws that we still have a job to do in analyzing those laws. Right. It's the same question. I don't think it's quite the same question, and let me explain why. I think what Noel Canning says, what Ballin makes very clear, is that to the extent that the framers have chosen not to decide on a particular thing, they've chosen to leave it up to Congress to decide how to conduct its own proceedings through the rulemaking clause, that the court's work is done. And so if quorum sort of could be reasonably interpreted or defined to require physical presence or to just require participation or sort of to require either, that broad range of discretion that the Constitution vests in the House is for the House to figure out how to exercise. It's not for – Are you – I take it you're not interested in invoking the unanimous consent? I've given you a chance to argue it, but it sounds like you're abandoning that theory. No, of course not, Your Honor. I mean, I think the unanimous consent problem is a huge problem in Texas this year. I don't understand this argument at all. The unanimous consent argument makes no sense to me. And I think it's because you're confusing quorum rules with voting rules, two completely different concepts. Unanimous consent is a voting rule. So let me say two things, Your Honor. Okay. First – And I'll have a follow-up. Sure. So first, I think the unanimous – the history of unanimous consent is exceedingly helpful as a historical matter in that – As a voting rule. I acknowledge that. I've seen it a gazillion times. Unanimous consent exists. You're absolutely right. Now, what does it have to do with quorum, given that it's a voting rule? In fact, during unanimous consent, is it true that any member can look around and suggest, wow, we're trying to vote this out, we're trying to do business, but there's an absence of a quorum? Can somebody object to unanimous consent on the basis of lack of a quorum? Yes. And is that the exact opposite of what's going on here? Here, Congressman Chip Roy tried to object, and he was disallowed based on the rule you're defending. I mean, he originally objected and went through the objection. But let me just say two things about the unanimous consent problem, if I can. Number one, I think since 1791, there have been unanimous consent procedures, and the Senate, going back to 1791, and the House, going back almost as long, have conducted business without a majority physically present on the floor. To the extent that Texas's view is that the quorum clause absolutely requires there be a physical majority present to conduct any business, the implication of that is that the Senate and the House have been violating the quorum clause in conducting their business for two and a half centuries, and no one has said anything. But you're aware that the whole premise of the unanimous consent is the presumption of a quorum. Right, and then number two. And then it's up to somebody to say that it doesn't exist. Did you get to say the two things? Yes. Do you have a second thing? Yes, and that actually brings me to number two, which is that usually the House and Senate don't get to presume away constitutional requirements. So I think it's a very weird interpretation of the interaction of the quorum clause and the rulemaking clause to say that the way those interact is that the House can presume away the quorum clause's physical presence requirement? Well, we presume a defendant is innocent until they're proven guilty. Proven that there's no quorum. Well, I don't think it's – is that all that complicated? I mean, I don't think there's a constitutional requirement that you're presuming away in that circumstance. But you have to have a quorum first before unanimous consent kicks in. It's a presumption based on the existence of a quorum, which is, again, presence. Whether it's physical or not, we're debating. But in other words, unanimous consent goes away when one member challenges it. That's it. But it doesn't ever come into being just as a presumption. There has to be a quorum first. I mean, yes, there has to be a quorum first. That's an important thing because that complies with the quorum clause. It has really little to do with how either the Senate or the House votes and approves legislation and does business thereafter. There has been a quorum established so that the power arises. Right. And there was a quorum established here. I mean, before this vote was taken, there was certainly a quorum. But only by proxy. I mean, before this vote was taken, there was a physical quorum that then sort of went away at some point. Counsel, before you tie this up, I'd like to ask you about that other part of your argument, the enrolled bill doctrine. It seems to me that it has some purchase when you just look at the older cases, Ballin, Marshall, Fields. But it seems to me that the hurdle for you is Munoz-Flores, who was talking about the origination clause. And the language in that case really does seem to try to put the enrolled bill doctrine into a box. It says it doesn't apply to looking at whether the Constitution was complied with. Help me with that. Why do you think it's still alive as a doctrine relevant to you after Munoz-Flores? Yeah. So let me say two things. Number one, I think to the extent that you read that footnote that's trying to confine Marshall Field to circumstances not involving the Constitution, that's just inconsistent with Marshall Field. Let me read to you from Marshall Field. I mean, it talks about the claim there as implicating, quote, the provisions of the Constitution relating to the enactment of laws. I think those are the same provisions or similar provisions that are issued in this case. And then I think just what was happening in Munoz-Flores is that it wasn't really a question about whether the procedural steps that the House and Senate had taken were proper or whether the bill had actually been enacted. I mean, the question whether a bill is one for raising revenue is sort of a legal question that's kind of orthogonal to the question of whether the House and Senate have properly convened and voted on particular texts. And if the chief will allow me to continue just a bit with this. It seems to me that what you're really arguing is Scalia's concurrence. And he did create some exceptions. He identified some exceptions that might work even on the majority's view. But it does indicate that there needs to be, it seems to me, there needs to be something different about what is being argued here, the Gorham Clause, from the Origination Clause. There's a different constitutional element to this. Is it structural? Is it something else? You may not be accepting my premise that there needs to be something different. But is there something different about the Gorham Clause from the Origination Clause? I think I would say it goes, the Gorham Clause requirement goes directly to the procedures that the House and the Senate are employing and how they consider themselves to be constituted, to be voting, to be enacting legislation. And the other thing I'll say is that we cite three Court of Appeals cases in our brief, all of which postdate Munoz-Forez, rejecting Gorham Clause requirements. Sorry, Gorham Clause challenges on martial field grounds. And so certainly, I guess, the 7th, 10th, and 2nd Circuits, all after Munoz-Forez, continue to give the martial field rule effect in the Gorham Clause context. And this Court certainly can do the same. Is it important at all to your argument that at some point there was a quorum? Because you mentioned that several times. Or is that not important? No, I don't think it's a key feature of argument. I think that what I would say the key feature of argument is, is the House has adopted rules allowing people to participate remotely. In this case, 427 members participated, actually testable on this legislation. And at that point, the Gorham Clause requirement has done its work. 99% of people have participated in passing legislation, and that's a quorum. And it went pretty quickly over here. I'm not sure you may have said this in answer to Judge Higginson's question, so I'm sorry if this is repetitive. But what was the answer to, I think it was Judge Ho's question, about the speaker just starting the session with proxies from everyone and just being the only one there? Even in that circumstance, you believe the courts have no right to say anything. Is that correct? Yeah, I think that's certainly an extreme hypothetical that it's pretty hard to imagine. That's why it's there, because it's supposed to illustrate the point. That's what a hypothetical does. It takes just the ends of your argument. Right. I think the Gorham Clause, I don't think, has much to say about that. I think the Gorham Clause is just about whether people are participating according to the rules of the House. There may be other provisions of the Constitution, if you had for a particularly extreme delegation. Well, is that participating? So that's participating, just giving the proxy to the speaker to vote out however the speaker wishes to vote, and the speaker being the only one there? That would be OK, because you don't have any sort of presence requirement? I mean, if there's a rule adopted that allows participation in that way, I don't think the Gorham Clause has much to say about it. Let me just point out, those sorts of proxies were known at the founding. There are state constitutions that explicitly exclude proxies from the Gorham requirement, and the framers didn't do that with the United States Constitution. And so if they wanted to make that choice, they could have, but they didn't. I don't see any other questions at this time, and you've saved time for rebuttal. Thank you. Thank you. Thank you. May it please the Court. My friend suggested that the framers relied on assumptions based on the technological limitations of their time. And in his argument, he relied on examples of modern technology, like video conferencing over Zoom. Those technologies are not at issue in this case, and this Court can and should leave questions of virtual presence for another day. The House did not adopt rules based on modern technology that the framers and ratifiers could not have envisioned. House Resolution 965 adopts proxy rules, a concept that the framers were familiar with. A member designates another member of the proxy by submitting a signed letter to the clerk, and then provides written instructions to the proxy, who must then cast a vote to record the presence according to those instructions. And, of course, while that proxy vote is being cast or the proxy presence being recorded, the physically absent member could well be traveling, campaigning, or engaging in any other activity. As my friend acknowledged, proxies were known by the founders and were used in the House of Lords. Now, the fact that proxies were known in the 18th century is significant. It does mean that this is not one of those difficult cases in which this Court has to apply an original principle forward in time to unknown technologies, like application of the Fourth Amendment, thermal imaging, or geofence warrants. This case is about the original principle itself. Either proxies could be used to satisfy the Constitution's quorum requirement in 1789 and can still be used today, or proxies were impermissible in 1789 and remain impermissible today. On that text, history, and precedent, I'll support the State's view that proxies cannot be used to satisfy the Constitution's quorum requirement. We'd urge this Court to affirm the District Court. I'd like to begin with the Constitution's text, but at this point, I do welcome the Court's questions. Well, Counsel, you spent a considerable amount of time just now establishing that the framers were aware of proxies, yet they didn't expressly prohibit proxies with regard to quorums or voting. Isn't that correct? I don't think you see the word proxies in the Constitution, certainly, Your Honor. But when we look and try to understand the Constitution's text, specifically the requirement the majority of each house— You said you don't think you see it. I don't see it. You're completely right. We do not see the word proxies in the text of the Constitution. But when we, I think, interpret the majority of each house to constitute a quorum, according to the second portion of that clause, which you discussed, that a smaller number may be authorized to compel the attendance of absent members. And the place to look is framing error dictionaries. The most natural reading of that, as I think was discussed, is the physical meaning, that we're referring to physical presence and physical attendance. Well, but there are definitions of quorum that include participation. And participation really is sort of separate from presence, particularly today in a virtual world in which we live. And so here, under the rule, these members were participating fairly close to real time. I mean, they sent in proxies, limited in number, particular legislation with instructions, according to the rule, to change your instructions if anything in the bill proposed legislation changed. So they were participating. How does that not meet the quorum requirement? Well, they were participating because the House, by its rules, permitted them to participate. But, I mean, if quorum is centered on participation, if the quorum clause is centered on the participation in legislating by a majority, I mean, that's what it is. The founders wanted majoritarian government, right? So if it's centered on participation, how is that not enough? So first of all, let me push back on that assumption. My friend talked a great deal about participation. I don't believe he cited a framing error dictionary that gives us participation as a definition for quorum. I saw one somewhere in one of the briefs. I can't recall where, forgive me. I think the source for that is New Process Steel versus NLRB. That's exactly what I was thinking. That's a 2010 decision. Founding-era dictionary. So it's a 2010 decision of the Supreme Court. It mentions participation in its text, but when you look at what it's actually citing for that, there's a 2009 version of Black's Law Dictionary, which defines quorum as a minimum number of members who must be present. There's a 1989 Oxford English Dictionary defining quorum as a number of members whose presence is necessary for the proper or valid transaction of business. There's a 1954 Webster's. A number of officers or members of any body as when duly assembled is legally competent. But again, why isn't participation enough to show that there was a quorum involved in legislating? I would go back first to the Constitution's text and to say when we try— Well, the Constitution's text doesn't say presence. It doesn't. Much less physical. Well, it doesn't say presence. It says absence. We have Bollin's Blast which glosses on that. Bollin tells us correctly, we think, that it's the presence of a majority that gives Congress the capacity to do business. Absence is obviously the opposite of presence. And so we see this constitutional dichotomy between absent members who are not part of the quorum who may then be compelled into attendance and become part of the quorum. Well, that could mean that if someone refuses to send in a proxy, then the marshal's going to go get him and bring him into Washington, D.C. and say, okay, we've got him on the House floor. Now the rest of the House can cast their votes. I mean, I don't see that as mutually exclusive. Well, so the question is what definition of those words we're looking at. And there was a discussion previously of the privilege from arrest clause, and that's helpful. Because my friend, when he talked about his definition of attendance, he referred to attendance two. When we look at the privilege from arrest clause, it doesn't say attendance to the business of Congress. It says attendance at the session of Congress. The framers were talking about this in terms of a physical location where Congress would meet and not just participate but be able to deliberate. Even if someone has recorded its participation by sending in a proxy, that doesn't mean that they have participated in the business of Congress by being present for those debates. I have one other question. We are not supposed to reach constitutional issues unless we have to. And here, Texas is saying that the entire appropriations bill was unconstitutionally passed. Yet, they are seeking equitable remedy, and that is to surgically excise one act, one piece of legislation out of a $3 trillion appropriations bill. Yet, they have accepted and will continue to accept benefits under the appropriations bill. It seems to me like in an equitable remedy, they cannot do that. They have to reject all or accept all. I would go back to Article 3. Texas argues here that it has been injured by being regulated by the President. I'm talking about equitable remedy. How can you say, well, I want the bill to be in effect for this piece, these pieces, but not this piece? Well, I think that would be a severability argument that my friend would make. It's not uncommon. The state of Texas certainly passes broad bills where there are plaintiffs who are only affected by a portion of it or only challenged a portion of it and then seek an injunction against the enforcement of that. Yeah, but this is a little bit different. You're seeking an injunction against the parts you don't like, but you're gladly accepting the parts you do. I think that's Judge Richman's question. Well, I think that's right. How is it equity to give you relief? Well, I think, so first, it is equity to give us relief and prevent the application and enforcement of an unconstitutional law against Texas. Texas's argument here is that the EEOC, the executive defendants in this case, would be both inflicting a recognizable injury on Texas by enforcing the Pregnant Workers Fairness Act against it. And Texas is seeking an injunction against those officers preventing the enforcement of that act. This is almost the writ of a ray through fallacy that's sometimes talked about. We're not asking this court to take a red pen through federal statutes and strike things out. We're asking this court to enjoin the enforcement of a law against Texas. And if my friend wants to say, well, that's not severable, there are other portions of the law that should have fallen along that. But the problem with that is the basis for enjoining that portion of a bill against Texas requires a finding that the bill is unconstitutional. So I still don't understand how I can call out the part that Texas doesn't like without making a ruling that affects the entire bill. How is that? Oh, I think that's right. This court's reasoning and ruling would certainly affect the entire bill. This court's judgment would only affect one portion of the bill. Well, how do you separate out one part of a bill when the whole thing is unconstitutional? This is not like a multi-section piece of legislation where we're saying, well, subsection B is unconstitutionally vague and you can sever that out. This rises or falls on the constitutionality of the entire bill. That's certainly correct. But there's no question that Texas's arguments would be in assertion that the entire bill is unconstitutional because it was passed in violation of the Quorum of Appointment. But nonetheless, the judgment in this case, the district court judgment that we're asking this court to affirm, is simply an injunction against the executive official. Suppose hypothetically that we come to the conclusion that it's an all or nothing proposition as a remedial matter. What is Texas's preference? What are you asking for? I believe Texas would continue to argue that it should be all. I think in those circumstances, if you thought that it was an all or nothing circumstance, the appropriate course might be to remand this report. That said, I'm not entirely certain this court would have the jurisdiction to modify the judgment in a way that would give Texas greater relief than it received from the district court. Texas has certainly asked for a limited injunction against the president. I'm mainly asking a preservation question. Is Texas asking, as a fallback matter, the entire bill be enjoined? I think we'd suggest a remand in those circumstances. Are you reserving the right to ask the district court on remand for an injunction against the entire bill, or are you only interested in partial or nothing? I'm just asking for the state's position. I'd ask for a remand to reserve those rights. I point out, as a matter of appellate procedure, we have not crossed a field. Ordinarily, a cross-appeal would be necessary in order to modify the judgment in a way that would enlarge Texas's presence or diminish those of the federal government. Are you going to interplead the funds that you got under the bill? Excuse me, but the issue of standing was decided by the district court. And the court found that Texas had standing to challenge one part of the bill but didn't have standing to challenge another part. Yes, Your Honor. So what people are talking about is purely remedial, it seems to me. If Texas got benefits from the bill, it would clearly not have standing to object to those benefits, I don't think. That's certainly our view. That's the way I thought the case was postured. And, of course, we have findings from the district court that we do have standing to challenge the Pregnant Workers Fairness Act but don't have standing to challenge the appropriations through the DHS. Let me get you back to the provision on compulsion. Is it your position that the fact that the Constitution only refers to one way to create a quorum by physically forcing members back as you interpret intended, therefore means that is the only way to compel? It seems to me it would have been entirely odd, it seems to me, for the Constitution to say, even if it would have been legitimate to have a quorum by proxies, that if there's not a quorum, the House minority can either compel people to attend or to execute proxies. It seems to me they chose one example, which is by far the easier. Any response to that? I mean, why would other ways to create a quorum somehow be affected by the compulsion clause? Well, we see the compulsion clause as defining what it means to be not part of a quorum, that is to be absent, and to be part of a quorum. It doesn't really just direct how to fix the absence of a quorum, however that absence is shown. We certainly don't think so because the assumption is that an absent member is not part of a quorum. And that applying the definitions from the time, the only one we think makes sense is the physical definition, that would mean that a member who has provided a proxy is an absent member, not a present member. May I follow up? I'd like to follow up on what Judge Southwich has asked you because he's talking about maybe there are other ways of compelling someone's attendance who is absent. And I heard a suggestion that, well, maybe one way of compelling attendance would be to compel them to execute a proxy under the rules of the House. So if that's the case, turning to the next clause that uses the word attendance, which is the privilege from arrest during attendance, when would someone who executes a proxy be privileged from arrest? We couldn't make any sense of it under the government, under the federal government. Well, it says, and they're also privileged in going to and returning from the same. So maybe if they're executing a proxy in one office, in the back office, maybe when they're walking from the front to the back, then they're privileged from arrest during that time. But I think that creates a problem because they need to- Sounds bonkers, doesn't it? That's certainly the state's view. Seems bonkers to me. Let me help you with the example that you can think of in response to my question. It does seem to me that what I'm talking about is the Constitution doesn't allow or doesn't address compelling the execution of a proxy. It makes perfect sense. The only way to compel fixing the absence that's set out in the Constitution is to compel the physical attendance. And that may be the only way to compel. So I think the rest of the Constitution fits that. But that doesn't address whether proxies would be relevant in deciding whether there's a warrant. You have one way to fix it, but majority presence can be created either way. I think what you're suggesting, Judge Zauschwick, is that members could be part of the majority for the purpose of the quorum, even though they are physically absent and even though they are not in attendance. And I think that's in conflict with what we see in the second half of the Quorum Clause and in the Privilege from Arrest Clause. And I point you to Story's commentaries on the Privilege from Arrest Clause, which I think are quite helpful. He says the reason members of Congress are privileged from arrest is because they have superior duties to perform in another place. But let me follow up with Judge Gray's, I think, well-taken question, which is suppose that there were an express provision in Article I, or actually suppose that we passed the Constitution amendment. Proxy voting shall hereby be authorized in the Congress of the United States. Are you saying that that would render the attendance and compulsory and privilege from arrest clauses to be absurd or surplusage? I'm not saying your argument is wrong, necessarily. I just want to make sure I understand intellectually the limits of your argument. Well, so first, Judge Zauschwick, do you draw a distinction between proxy voting and proxy presence? No, no, fair enough. I appreciate that. Suppose I'll amend my Constitution amendment. A proxy shall be permitted for establishing quorum as well as for purposes of voting and doing business. That wouldn't render those clauses absurd, would it? It wouldn't render them absurd. So let me ask my follow-up question, again, channeling Judge Gray's. It seems like there's agreement. We have a case of textual silence. The Constitution neither authorizes proxies nor prohibits. So here's my earnest question I'm going to ask the United States as well. What is your best authority for the proposition that in the realm of textual silence, we should presume that proxies are forbidden or authorized? What's the default rule? And there may be a body of corporate law that might be relevant here. And, Judge, I want to disagree with the idea that we have textual silence because my argument is not that we have— Well, you have textual cues, and I get that. But that's why I've given you the hypothetical of an express proxy provision that I don't think would render those provisions to be absurd. Maybe you would say that they would, and they're in inevitable conflict. Well, I think that— In fact, I think you have to say that. I think that's right. I think that amendment you're suggesting would change the meaning of the phrase, the majority of each house shall constitute a quorum. We interpret that phrase in light— Well, it just means that you can establish it by proxy as well as by physical attendance. Well, I think that's right. But without your amendment, what we would do is look to the compulsion piece of the Quorum Clause, and we look to the Privilege and Rest Clause, and say those inform the meaning of a majority of each house shall constitute a quorum. So I believe I'm making a very textual argument. Fair enough. But can you accept—I do have—I apologize. I just want to make sure I—this case, if we go your way, it's going to the Supreme Court. Yes. And I want to make sure, if it goes that way, that we have the best authorities available. So I'm asking both sides, is there any law, whether it's corporate law or some other body of law, where in the realm of silence, whether it's Congress or a private corporation, will you have silence with respect to quorum? Do we presume proxies allowed, or do we presume proxies forbidden? I assume there's an answer to this question somewhere that I just haven't seen. Well, let me give you at least a partial answer. So my friend talked about the practices of administrative agencies and practices of how courts vote. I point you to the Braniferes v. Civil Aeronautics Court decision from the D.C. Circuit. It talks about two different ways that bodies can conduct work. There's what's known as a notation practice in which the views and votes of members are recorded separately rather than in a joint session. You also see notational voting discussed by Idaho v. ICC from the Ninth Circuit. And that's why we think the comparisons to the work of the courts that my friend is relying on aren't effective. Because when this court is deciding a case, its votes are not cast within a single 15-minute period. That voting window ends, and the decision is fixed. You can change your votes until the opinion is released. There's tentative voting, but nothing is finalized until the opinion actually goes out the door. I have three uncertainties, if you could sort of mentally remember each and respond in any order you want. One is just a rule of law question. One is a ballot question. The last one is a McConnell, amicus question. I'm still a little bit unclear how you can say the quorum clause textually and historically requires physical presence, but still leave for another day whether or not remote participation could be constitutional. So that's a rule of law question, what you're proposing. The ballot question is, this rule had 99% active participation. How does it get less deference than the rule in ballot where the House was allowed to count completely non-participating members? That's a deference question. And then on McConnell's point, it seems to me that his observation about unanimous consent is their absence is constitutional for as long as 24 months. So, again, how could it not be constitutional when you have 99% active participation? Those three questions. Thank you. Let me do my best to take those in order. So you'll forgive me. The second question is related to Ballin and the amount of participation. That one, we view Ballin as certainly supporting us because we think Ballin takes us away from a participation requirement from a quorum. Congress, the Supreme Court in Ballin, emphasized the participation requirement and said participation is not necessary. It is presence that is necessary. And you're allowed to count members who are present but not participating because it's merely presence that is required for Congress to be able to have that capacity to find that business. And the Court didn't say Congress has unlimited power to determine what constitutes a quorum. It said that Congress needs to adopt rules that are reasonably certain to ascertain the fact of fiscal presence. Unanimous consent. Judge Ho, as you noted, we don't see the inconsistency between our position and the unanimous consent practice. And I think my friend's not really relying so much on unanimous consent as he has reliance on the practice of presuming the existence of a quorum where the journal is silent and where Congress is simply relying on legislative practices there. And you can answer these questions in two different ways. The answer to when and under what circumstances Congress is free to presume the existence of a quorum where a quorum has already been established at the start of the question doesn't really answer the question of when Congress is actually determining whether there's a quorum. Counsel, counsel, I'd like to – over here. I'm sorry. I'd like to go back to Judge Ho's questions regarding silence. The government has pointed out that state constitutions included a physical presence or personal presence requirement. Why aren't we to take the framers not doing that here as indicative? Your Honor, we would say we don't view this as silence. We agree the Constitution doesn't use the word proxy, but when we look at the meaning of the words they do use, authorized to compel the attendance of absent members, we see this dichotomy. Absent members are not part of the quorum. Members in attendance are. And Congress cannot, by its rules, treat absent members, physically absent members, as being part of such a quorum. And we look, for example, at George Mason and talk about the reason for the quorum clause in the first place, that we need a quorum because sinful states could always be on the spot and outstay the distant states and carry such measures as they please. So we needed that. Then why would states use the term physical or personal presence? Why are we to take that as meaning one thing and the absence of those words in the Constitution to mean exactly the same thing? Different state constitutions were written by different drafters at different times. I think if you did perhaps have a state constitution that was written by the same constitutional convention at the same time as the United States Constitution, perhaps it would be permissible to compare those. I don't think I've seen that done as a matter of constitutional interpretation. Judge Higginson, I owe you an answer to at least one additional question. What was it? I guess it was, is your position that Congress has to assemble physically together? And if it's, is it in a particular place or is it just not ever remote? Oh, I'm sorry. You asked about how I can say leave virtual presence for another day. Thank you. Which I think is an important question. Because there are two different inquiries this Court occasionally has to make. We view this Court as having to identify what original principle existed in 1789. Did the Constitution at that time, was it originally understood to be limited to physical presence or did it include presence by proxy? And these were both concepts that framers were familiar with. Now, if we jump forward 230 some odd years, we now have additional technological mechanisms that can allow people to be present in ways that really couldn't have been envisioned at the time of the framing. Remote participation by Zoom where you have a person who is participating in real time, capable of discussing, capable of speaking, presents a very different inquiry than simply presenting a proxy. Counsel, you mentioned at the beginning that we should leave the question of virtual presence for another day. But if we find that there is a physical presence requirement, aren't we essentially bound by that? Haven't we answered the question? How can physical and virtual presence be the same? Well, no, Your Honor, what I would do is I would break the opinion by saying the question for us is whether proxies, signed writings, can be used to satisfy the Constitution's quorum requirement. Looking to the understanding of the quorum requirement in 1789, based on reputation debates, based on what was known at the time, informed by United States versus Fallon, and probably informed by the absence of a limiting principle in my friend's argument, proxy presence cannot be used to satisfy the quorum requirement. Because at the time, it would have been understood to be physical presence. Now, to the extent there are modern forms of presence that are neither proxies nor are physical presence, that's a hard question to leave for another day. Would you restate your answer to Judge Richman's up or down question, stated differently? I still don't understand what your response is. Is it the Constitutionality of El Non, the ultimate issue that's before the court? I heard what you said about appeal from the injunction below. I don't understand how the remand piece fits, though. The question asked is, is Texax asserting an unconstitutionality argument vis-a-vis the enactment of this whole bill? Yes, Your Honor. So how does severability and remand to the district court work? Well, we don't think that's necessary. We have a judgment from the district court that enjoins enforcement of the Pregnant Workers' Parents Act. Oh, I understand that. But it's obviously, once we go to the case in bank, it schools out. It's tabula rasa, right? We got the appeals from the judgment that came up. We had a panel opinion. That's vacated. So it's a blank slate on all the arguments that are mentioned. I'm just trying to understand this whole bill. The question she asked me, does Texas acknowledge that there's an up or down argument on the constitutionality of the entire statute? Yes, Your Honor. Absolutely. That's an argument. Now, the judgment we're asking is simply affirmance of the injunction entered by the district court. It is possible that there will be other plaintiffs who seek to challenge other aspects of the statute in future cases. They may or may not have standing. That's not my point. Texas stood there. Chip Roy objected. Ken I object. Well, Texas didn't say, hey, this is an unconstitutional bill. We're not taking a dollar under it. They took the money, and then now they're in court saying, well, we got what we want from that. And we don't have standing to challenge. That doesn't make sense to me. They're saying, we want the whole thing declared unconstitutional so that we can pinpoint what we don't like. I would say this is not one of those commerce clause cases where the state's being offered money in exchange for accepting obligations that it might not otherwise accept. The piece of the statute we're challenging here is a direct regulation of the state. But it did a lot of other things. It was an omnibus bill. And you said multiple times that Texas's constitutional challenge goes to the entire bill. Yes. Our arguments do affect that. So if it's all unconstitutional and Texas has received benefits, it seems to me as an equity proposition, they are now barred from taking the good parts and seeking to reject the parts they don't like. And I think that I view that as a severability argument that my friend would have to make to say that these portions of the bill have to stand or halt. Well, how do we unscramble the egg? I think Article IV gives us the answer. Has this argument been raised by the government? I certainly didn't see it in the government supplemental en banc briefing, Your Honor. The government hasn't challenged Texas's standing. And I don't think the government is – I'm sorry, the federal government has suggested that Texas should receive broadly relief. I thought I saw it in the opening paragraphs that, you know, how can Texas say we want to unwind this but not the rest of it? I thought they made precisely that argument. But, I mean, I'll say just as a matter of state law, this does come up in bills passed by the state where a private party will object to a particular application of the law against them. But they're not challenging the entire bill at that point. They're just entirely challenging a section of a statute that it has applied. They're not saying the whole thing is unconstitutional as Texas is saying here. I see that completely – I thought you did engage it considerably because the veterans bring it up. They're worried about the health care education programs. But separately, before your time's up, do you recall in the bench trial there was quite a bit of discussion about how roughly at the same time the House passed this rule, the Supreme Court itself had a rule allowing remote proceedings in spite of a Sixth Justice quorum. Is the answer to that it's just not constitutional or is there a more fulsome answer? No, and I'd love to give that answer, actually, because that's the point I was attempting to make, to say that we view remote real-time proceedings, Zoom, using modern technology that couldn't have been envisioned in 1789 as simply qualitatively different than proxies that were known in the 18th century and simply record presence. And I encourage you, just think of a thought experiment here. Imagine this court needed nine judges present as a quorum to hold oral argument. This court has held Zoom arguments before with real-time communication. Arguments still work exactly the same way. It would be an extremely different case, and I don't think anyone would suggest that the quorum requirement was satisfied if we had one judge who was sitting on the bench who said, I have notes from nine or eight of my colleagues who say I'm not actually going to be present, but this note says you may – But it's still not physical presence. That still wouldn't be physical presence under the argument that you made. Well, what I would say is, no, that would be a type of virtual presence. I think that's not before this court in this case. That's a question for another day, but I think it's enough to say – But, counsel, your brief repeatedly refers to a physical presence requirement. So aren't you shifting your argument now from physical presence to no proxy? Well, no, it's the same argument, Your Honor, because when we look at the framing, there's really two choices. Either physical presence is necessary to satisfy the quorum requirement, or the quorum requirement can be satisfied through proxies with assigned writing. I have one historical question. Is it not correct that the House of Commons in England did not use proxies? Yes, Your Honor, that is correct. And the framers were well aware of that. Yes, Your Honor, and I'll simply just close unless there are further questions. Well, if I may, Chief, because all of this – you spent so much time establishing how much the framers knew. If they knew all that, all these brilliant minds, if they knew all that, all they had to do was put in there one line that says there shall be no quorum by proxy. They were aware of proxies. They knew who didn't use them. They knew who did use them. They had all these state constitutions, and yet they said nothing about prohibiting proxies. And I'd point you back to George Mason's comments about the need for the quorum clause. You'll see it on record, page 2121. We need a quorum clause because otherwise central states could be on the spot and could outstay the distant states. The assumption of the quorum clause, the assumption of the framers, and the need for the quorum clause is that voting and Congress was going to take place on the spot in person. What I'd appreciate if they had included and expressed prohibition on proxies. Yes, Your Honor, that would strengthen the case. But when we look at the framing in our dictionaries and recognize that – So that proves that there is a physical presence requirement, the George Mason quotes. I totally agree with you on that. It doesn't disprove the proxy question. That's why I go back to my point about textual silence. Just to explain where I'm going with this, Article I, Section 7 actually doesn't tell us what it takes to pass a bill. It doesn't say a majority. It's presumed from corporate law. That's always been my understanding. That's why I ask the question, when a corporation, when any multi-member body exists and it doesn't say one way or the other proxy, what are we to presume? I'm assuming it's no proxies. That just makes intuitive sense to me, which is why I'm tending to affirm. But I want to make sure I get the law right. Do we have any treatises, any case law that you can cite or the United States can cite that tells us when we are silent, when we are told neither that proxies are allowed or forbidden, what's the default rule? Much like a majority is the default rule to pass a law. Not that we are familiar with or we've identified, Your Honor. I'd welcome supplemental. I don't know if that's to be permitted. But this is a very important question to me. I do think there's a little bit of danger there with generalizing. Because I think this rule can change in different ways over different times. If you have a body that's using a notational practice, it's going to be very different than a body that has to operate in session. And so I think reliance on notational voting procedures just isn't informative. And so it could be misleading to rely on some of those protections. But for those reasons, we'd ask this Court to follow. Thank you. Mr. Janna, you have to save time for rebuttal. Thank you, Your Honor. I just have four brief points I would like to make. Before that, can you tell us whether or not you argue in your brief that it would be inequitable for Texas to get relief here if they didn't give back all the money that got back was given in appropriations? Yeah. So we certainly, I think, point out the inequity and inconsistency in the positions that Texas is taking. We haven't made sort of a freestanding argument that they shouldn't get equitable relief on that basis. And maybe we could have in district order in this Court. I don't think we've fully developed that argument. But I would say, and this is sort of a personal way to make it, I think how the government would have to implement a decision of this Court, the logic of which would be that the entire Consolidated Appropriations Act is unconstitutional. I have no idea how the government would implement that. It's probably way above my pay grade. The Congress could ratify what they passed by passing it. It passed by unanimous consent. Well, I think that would run into its own problems under Texas' theory. But anyway, I don't know what the executive branch would do. I mean, there's so much money at stake. There's a ton of pieces of permanent legislation. And I think that those uncertainties are— But we don't have too big to be unconstitutional or constitutional, do we? No, but I think those uncertainties are exactly what's driving in large part the Marshall Field Rule, which is when Congress tells you that it has enacted a bill according to the forms of the Constitution, courts are required to accept that. And looking back four years later and trying to undo, to unscramble the egg— Well, but the problem is Congress told us they did not do it in accordance with the Quorum Clause if the Quorum Clause requires physical presence. In other words, we don't have to get into Marshall Field because the congressional record itself is undisputed. There was not a majority of members present when they voted for this. So there is no Marshall Field problem. I mean, I think there is a real Marshall Field problem. Well, Congress can tell us they did it according to the Constitution, but when it's apparent from those records they did not, I don't see how Marshall Field is implicated. Yeah, I mean, I don't—I just want the court to agree to this. I don't think Marshall Field has anything to say about sort of which—saying some sources you can look to, some sources you can't look to. I think what Marshall Field says, and quite categorically, is— It doesn't matter which sources we look to. There's no dispute whatsoever that all the official records show there was not a physical present majority for this bill. Right. We don't have a factual dispute on that. I mean, I'll tell you there are a lot of times where there's going to be video of the chamber of two people passing something through unanimous consent. There's not going to be a factual dispute. I think Texas would turn to the Marshall Field rule as sort of one basis for saying courts don't get to second-guess those procedures. Well, hold on. Can I go back to your video point? Because I think that's very deceptive. Are you saying that physical presence means what if they're all in the cloakroom? Is your point that—I'm just not following where you're going with this. I'm well aware. I've been on the floor when there's nobody there, and there are a bunch of people in the cloakroom. There are a bunch of people right outside. My point is that— Is that the whole point of unanimous consent and the presumption is that you're allowed to test it, and we can produce a quorum like that and the vote happens, or we can't and the votes postpone the week? This happens all the time. My point, Your Honor, is that if the way to get out of the Marshall Field is to say, well, there's not really a factual dispute here because the parties agree on the relevant facts, I don't think that does a whole lot when it comes to preserving, which I think Texas wants to preserve, the unanimous consent procedures, the voice vote procedures, where there may well not be that factual dispute. Would you answer Judge Ho's question, though, that he posed to counsel opposite? Where there is textual silence, what is the authority for presuming either—nobody said anything about proxies, so whether they're prohibited or whether they're permitted? Right. So I think that brings me to my second point, which is that when there is not a clear textual requirement constraining Congress's ability in this context, the default rule, I think Mel Panning makes this very clear, I think Fallon implies this, is that Congress gets to decide for itself how it is going to conduct its own proceedings. But how do you square that with the Constitution of enumerated powers, not unlimited powers? Because the rulemaking clause, Your Honor, I mean, gives Congress— The rulemaking clause, but the whole framework of the Constitution is that silence does not mean the government had the power. It meant the people had it. Right, but the rulemaking clause, I think, gives Congress the authority to determine how to conduct its own proceedings. But we're talking about the quorum clause and whether we should presume, because the founders didn't prohibit proxies, they were therefore permitted. And I think the question, as teed up by Judge Hager, Your Honor, is that if you could interpret quorum in different ways, if quorum could be counted or established in multiple reasonable ways, what do you do? And I think the answer is if Congress has multiple reasonable ways to count a quorum, they get to pick which of those ways they are going to adopt. With 25 seconds left, did you want to respond to anything else opposing counsel said? Not specifically, but let me just wrap up by saying I think the essential purpose of the quorum clause here, I mean, that's what Noel Kenney tells you, you should look to the essential purpose of the clause. I think everyone agrees it's to stop the prospect of non-majority legislation, of a minority junta passing legislation over the will of the majority. That's still plainly not what's happening here. And I think any interpretation of the quorum clause that would disable 99% of members from voting on and passing legislation just cannot be squared with the essential purposes of the clause itself. That we would ask the Court to reverse. Thank you. We appreciate all the arguments in this case. And the case is submitted. The Court will take a brief recess before considering the second case of the day.